1
2
3
4
5
6                        UNITED STATES DISTRICT COURT

7                              DISTRICT OF NEVADA

8                                          * * *
                                           )
9   RANGESAN NARAYANAN and GEORGE          )
    FERNANDEZ,                             )
10                                         )            3:11-cv-00744-LRH-VPC
                    Plaintiffs,            )
11                                         )
     v.                                    )            ORDER
12                                         )
    THE STATE OF NEVADA ex rel. THE        )
13  BOARD OF REGENTS OF THE NEVADA         )
    SYSTEM OF HIGHER EDUCATION ON          )
14  BEHALF OF THE UNIVERSITY OF            )
    NEVADA, RENO, and MARC JOHNSON, in     )
15  his individual capacity,               )
                                           )
16                  Defendants.            )
    _____    )
17

18          Before the court is Defendants' Motion to Dismiss or for Judgment on the Pleadings (#26[1]).

19  Plaintiff filed an opposition (#29), and Defendants replied (#31).

20  **I.      Facts and Procedural History**

21          The facts as alleged by Plaintiffs are as follow.  Plaintiffs Rangesan Narayanan

22  ("Narayanan") and George Fernandez ("Fernandez") are citizens of the State of Nevada, residing in

23  Washoe County.  (Am. Compl. (#9), ¶¶ 4-5.)  Narayanan's nation of origin is India.  (Id. ¶ 28.)

24  Fernandez's nation of origin is Sri Lanka.  (Id. ¶ 29.)  Fernandez was 58 years old at the time of his

25

26  _____

          [1]Refers to the court's docket entry number.

1  termination.  (Id. ¶ 32.) Defendant Marc Johnson ("Johnson") is a citizen of the State of Nevada,

2  residing in Washoe County.  (Id. ¶ 7.)  Johnson has served as Interim President of the University of

3  Nevada ("UNR") since April 2011, following the death of former UNR President Milt Glick.  (Id. ¶

4  34.)

5          The Board of Regents of the Nevada System of Higher Education on Behalf of the

6  University of Nevada, Reno ("Board of Regents") hired Narayanan and Fernandez in 1984 and

7  1988, respectively, as Assistant Professors at UNR.  (Id. ¶¶ 8-9.)  The Board of Regents awarded

8  tenure to Narayanan and Fernandez in 1990 and 1994, respectively, in a department that would

9  become known as the Department of Resource Economics.  (Id. ¶¶ 10-11.)  In 2000, the Board of

10  Regents appointed Narayanan to the administrative position of Associate Dean of Outreach for the

11  College of Agriculture, Biotechnology, and Natural Resources.  (Id. ¶ 12.)  In 2002, the Board of

12  Regents appointed Fernandez to the faculty position of Statistician in the Nevada Agriculture

13  Experimental Station in the College of Agriculture, Biotechnology, and Natural Resources, a

14  position from which he was promoted to Professor in the Nevada Agriculture Experimental Station

15  by the Board of Regents.  (Id. ¶ 13.)  Both plaintiffs satisfactorily performed their work duties and

16  met the job-related requirements for their positions.  (Id. ¶¶ 15-16.)  In 2007, the Board of Regents

17  appointed Fernandez to the administrative position of Director and Chief Statistical Consultant for

18  the Center for Research, Design, and Analysis.  (Id. ¶ 14.)

19          Both Fernandez and Narayanan entered into employment contracts for the academic year of

20  2009-2010 with the Board of Regents  under which they were tenured faculty members assigned to

21  serve their positions.  (Id. ¶¶ 17-18.)  Section 5.4.3 of the Nevada System of Higher Education

22  Code (the "Code") integrates the provisions of the Code with all employment contracts except as

23  varied in writing by the parties to the contract.  (Id. ¶ 19.)  Narayanan's and Fernandez's contracts

24  did not vary this provision.  (Id.)  Section 3.4.6 of the Code states that a tenured administrator may

25  be removed without cause, reasons, or right of reconsideration of the action, "but shall be

26

1   reassigned in an appropriate capacity within the member institution in which the appointment with

2   tenure was made." (Id. ¶ 20.)  Sections 5.4.7(a)-(b) of the Code state that if a faculty member is

3   "furloughed, pay is reduced or the faculty member is threatened with lay off or is laid off because

4   of financial exigency," the faculty member will be continued in employment "if possible and if

5   such employment does not result in the termination of employment of another faculty member."

6   (Motion (#26), Ex. 1-2.)[2]

7           In early 2010, an $11 million budget reduction was mandated by the Nevada legislature for

8   UNR, coming after budget cuts in the amount of $33 million beginning in 2008.  (Id. Ex. 7.)  While

9   UNR was forced to begin cutting programs with the $11 million budget reduction, its

10  administration agreed on a vertical approach, protecting the quality and size of its core programs

11  while closing, reducing, or reorganizing less crucial programs.  (Id. Ex. 10.)  On March 1, 2010,

12  Johnson issued a "curricular review proposal" to close the Department of Resource Economics.

13  (Am. Compl. (#9), ¶ 22.)

14          On May 20, 2010, the Interim Vice President for Research notified Fernandez that he would

15  be reassigned from his administrative position to his "tenure home" in the Nevada Agriculture

16  Experimental Station in the Department of Resource Economics.  (Id. ¶ 23.)  On June 4, 2010, the

17  Board of Regents approved the closure of two departments within the College of Agriculture,

18  Biotechnology, and Natural Resources, including the Department of Resource Economics.  (Id. ¶

19  24.)  On June 7, 2010, Johnson notified Narayanan of his reassignment from his administrative

20  position to a faculty position in the Department of Resource Economics, effective June 30, 2010.

21  _____

22  [2]Defendants request that the court take judicial notice of sections of the Code, UNR bylaws,
    and the agenda and minutes of the Board of Regents.  On a motion to dismiss, a court may look beyond

23  the complaint to matters of public record as well as records and reports of administrative bodies.  Mack
    v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).  The Nevada System of Higher

24  Education Code has the "force and effect of statute," State ex rel. Richardson v. Board of Regents, 70
    Nev. 144, 150, 261 P.2d 1199, 1201 (1981), making it a matter of public record.  The agenda and

25  minutes of the Board of Regents are also public records.  This court takes notice of those documents,
    attached as Exhibits 1-15 to Defendants' Motion to Dismiss.

26                                                    3

1   (Id. ¶ 25.)  On June 30, 2010, the Board of Regents terminated Narayanan and Fernandez for the
2   stated reason that the Department of Resource Economics was being closed.  (Id. ¶ 27.)

3          Of the five administrators who had obtained tenure while appointed at one of the two closed
4   departments, the Board of Regents terminated three administrators, including Narayanan and
5   Fernandez, whose nation of origin was not the United States and retained the two administrators
6   whose nation of origin was the United States.  (Id. ¶ 31.)  Of the 23 faculty members who obtained
7   tenure while appointed at one of the two closed departments, the Board of Regents terminated all
8   eight faculty whose nation of origin is not the United States and terminated only 5 of the 15 faculty
9   whose nation of origin is the United States.  (Id. ¶ 31.)  The Board of Regents did not terminate the
10  Associate Director for the Center for Research, Design, and Analysis, who is at least 10 years
11  younger than Fernandez, does not hold a tenured faculty position, and had been at UNR for four
12  years as opposed to Fernandez's 22 years.  (Id. ¶ 33.)

13         On July 12, 2010, Narayanan filed a written request for a grievance proceeding regarding
14  his reassignment.  (Id. ¶ 34.)  On August 19, 2010, Narayanan orally requested a grievance
15  proceeding regarding his reassignment.  (Id.)   The University did not respond to either of these
16  requests.  (Id.)  On December 16, 2010, Narayanan filed a charge of discrimination against UNR
17  with the United States Equal Employment Opportunity Commission (EEOC) alleging national
18  origin discrimination.  (Id. ¶ 35.)  On July 26, 2011, the United States Department of Justice issued
19  Narayanan a Notice of Right to Sue within 90 days of Narayanan's receipt of the notice.  (Id. ¶ 36.)
20  On October 18, 2010, Fernandez filed a charge of discrimination against UNR alleging age and
21  national origin discrimination.  (Id. ¶ 37.)  On July 25, 2011, the United States Department of
22  Justice issued Fernandez a Notice of Right to Sue within 90 days of Fernandez's receipt of the
23  notice.  (Id. ¶ 38.)

24         Plaintiffs filed this action on October 14, 2011.  On November 18, 2011, they filed an
25  amended complaint (#9) alleging the following claims against the Board of Regents and Johnson:

26                                                      4

(1) national origin discrimination, (2) age discrimination, (3) violation of procedural due process rights, (4) violation of substantive due process rights, and (5) breach of contract.  Defendants answered on December 20, 2011, and now move for dismissal or judgment on the pleadings.

## II.    Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).  In ruling on a motion for judgment on the pleadings, the court accepts as true all well-pleaded factual allegations by the nonmoving party and construes the facts in the light most favorable to that party.  Id.  Thus, when brought by a defendant, the same legal standard applies to a post-answer Rule 12(c) motion for judgment on the pleadings as applies to a pre-answer Rule 12(b)(6) motion to dismiss for failure to state claim upon which relief can be granted.  See Johnson v. Rowley, 569 F.3d 40, 43-44 (2d Cir. 2009); see also Fed. R. Civ. P. 12(h)(2)(B) (providing the defense of failure to state a claim may be raised by a motion under Rule 12(c)); Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980) (holding that a post-answer Rule 12(b)(6) motion should be treated as a Rule 12(c) motion).

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Rule 8(a)(2) notice pleading standard.  See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1103 (9th Cir. 2008).  That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. See id. at 1949-50. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. Id. However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1951) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." Id. (citing Iqbal, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Id. (quoting Iqbal, 129 S. Ct. at 1949).

## III. Discussion

### A. National Origin Discrimination

In their first claim for relief, Plaintiffs allege that the Board of Regents and Johnson discriminated against them based on national origin. Their claim is brought under Title VII and 42 U.S.C. § 1981 as to the Board of Regents as their employer, and under 42 U.S.C. § 1983 as to Johnson individually for the alleged violation of their rights to equal protection under the

1   Fourteenth Amendment.

2          Defendants first contend that Plaintiffs have failed to state a claim under Title VII, arguing

3   that Plaintiffs have failed to state a prima facie case of employment discrimination under

4   McDonnell Douglass v. Green, 411 U.S. 792, 802 (1973).  To establish a prima facie case of

5   employment discrimination, Plaintiffs must prove that (1) they belong to a protected class; (2) they

6   were qualified for the positions; (3) they suffered an adverse employment action; and (4) similarly

7   situated individuals outside their protected class were treated more favorably.  See Leong v. Potter,

8   347 F.3d 1117, 1124 (9th Cir. 2003).  However, McDonnell's prima facie standard is an evidentiary

9   standard and is not required at the pleadings stage.  Swierkiewicz v. Sorema N.A., 534 U.S. 506,

10  512-13 (2002).  A plaintiff in a protected class can sufficiently allege discriminatory intent by

11  alleging that an employer treated others not in the protected class more favorably than the plaintiff.

12  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000).

13         In their complaint, Plaintiffs allege that their nations of origin are not the United States, that

14  they were performing their job satisfactorily, that they were terminated, and that the Board of

15  Regents discriminated against them on the basis of national origin when it selected them for

16  termination while retaining other administrators and faculty whose nation of origin is the United

17  States.  This is sufficient to give rise to a plausible claim that the Board of Regents intentionally

18  discriminated against Plaintiffs on the basis of national origin by treating similarly situated

19  individuals outside Plaintiffs' protected classes more favorably.  While Defendants may be able to

20  offer evidence that their  decision making process was not discriminatory and was motivated solely

21  by budgetary concerns, they must do so at the summary judgment stage, not during a motion to

22  dismiss, which is confined to the complaint and the public record.  Defendants' motivations in

23  choosing which administrators and faculty to retain or terminate is not a matter of public record.

24  Defendants' motion to dismiss will therefore be denied as to that portion of Plaintiffs' first claim

25  for relief that is alleged against the Board of Regents.

26
                                                7

The motion to dismiss will be granted, however, as to Plaintiffs' § 1983 equal protection claim against Johnson. The claim is based on the theory that Johnson violated Plaintiffs' rights to equal protection "by participating in the wrongful termination of [Plaintiffs]," specifically by issuing the curricular review proposal to close the Department of Resource Economics. (Am. Compl. (#9), ¶¶ 22, 41; Opposition (#30), p. 12.) The amended complaint includes no allegations, however, that Johnson had any role in the decision to terminate Plaintiffs, or that Johnson's proposal to close the department included any specific recommendations as to Plaintiffs' terminations. Rather, it is apparent from the allegations of the amended complaint that the closure of the department and the termination of Plaintiffs were separate decisions. Johnson issued the proposal recommending the department closure on March 1, 2012, and the Board of Regents approved the closure on June 4, 2010; however, Plaintiffs were not terminated until June 30, 2010, and the decision was allegedly made by the Board, not Johnson. Also, given Plaintiffs' allegations that some of the administrators and faculty members in the closed departments were retained, it is apparent that Johnson's department closure recommendation would not have necessarily resulted in Plaintiffs' terminations. Rather, those retention and termination decisions were made by the Board of Regents.

Plaintiffs argue that personal participation in a termination decision is not required and that it is sufficient that Johnson made a recommendation that set in motion a series of events that led to Plaintiffs' discriminatory termination on the basis of national origin, citing Gilbrook v. City of Westminster, 177 F.3d 839, 854 (9th Cir. 1999). That case is clearly distinguishable, however. In Gilbrook, the series of events leading to the plaintiff's termination was set in motion by a person acting with a discriminatory motive in recommending that termination to superiors, and the court held that the defendant could not use the non-discriminatory motive of his superiors as a shield against liability for his own discriminatory decision. Id. at 854-55. Here, by contrast, Plaintiffs allege that the Board of Regents acted with a discriminatory motive in deciding which faculty

8

members to retain or terminate upon closing the department, but not that Johnson's proposal to close the department was motivated by a discrimination against Plaintiffs based on national origin, or even that the proposal included any recommendation that Plaintiffs be terminated.  Thus, while Johnson's recommendation to close Plaintiffs' department may have, in fact, set in motion the events that led to Plaintiffs' termination based on the discriminatory decision of the Board of Regents, the Board's discriminatory motive cannot be imputed in reverse to Johnson.

For these reasons, the motion to dismiss Plaintiffs' first claim for relief for national origin discrimination and violation of their equal protection rights will be denied as to the Board of Regents but granted as to Johnson.  The dismissal as to Johnson will be without prejudice, however, and with leave to amend.

**B.  Age Discrimination**

Defendants next move to dismiss Plaintiffs' second claim for relief, which is brought only by Fernandez against the Board of Regents for age discrimination under the federal Age Discrimination in Employment Act ("ADEA").  The ADEA is the exclusive federal remedy for age discrimination.  Ahlmeyer v. Nevada System of Higher Education, 555 F.3d 1051, 1060-61 (9th Cir. 2009).  As Defendants contend, the ADEA does not abrogate States' sovereign immunity, making state institutions like the Nevada System of Higher Education immune from lawsuits under the ADEA.  Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000).

Plaintiffs argue that under Police for Automatic Ret. Ass'n v. DiFava, 317 F.3d 6, 12 (1st Cir. 2003), this immunity applies only to actions seeking monetary relief, not to actions seeking injunctive relief.  The court disagrees.  DiFava qualifies its holding as "pursuant to Ex parte Young."  Id. (citing Ex parte Young, 209 U.S. 123 (1908)).  Yet the doctrine of Ex parte Young merely "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law," and "has no application in suits against the States and their agencies, which are barred regardless of the relief sought."  Puerto Rico Aqueduct and Sewer Authority v.

9

1    Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

2        The Board of Regents, an organization of the Nevada System of Higher Education, is

3    therefore immune from ADEA claims, and Fernandez's ADEA claims will be dismissed with

4    prejudice.  However, leave to amend will be granted to provide Plaintiffs the opportunity to allege a

5    claim for age discrimination under state law.  See NRS § 613.330.

6        **C.  Procedural Due Process**

7        In Plaintiffs' third claim for relief, brought under § 1983, Narayanan alleges that Johnson

8    violated his Fourteenth Amendment right to procedural due process by ignoring his request for

9    reconsideration of his reassignment to a faculty position in the Department of Resource Economics.

10   However, NSHE Code § 3.4.6 provides that "an administrator who also holds an appointment with

11   tenure, whether granted during or before employment in the administrative position, may be

12   removed from the administrative position without cause, reasons or right of reconsideration of the

13   action."  Thus, Narayanan, who was an administrator who held an appointment with tenure, had no

14   right to any form of reconsideration, including a grievance proceeding.[3]  Moreover, Narayanan fails

15   to plausibly allege that Johnson was the responsible party.  Although it is alleged that the university

16   president "makes final decisions on grievances" and that Johnson served as interim president, he

17   did not serve in that capacity until after Milt Glick's death in April 2011, long after Narayanan

18   made his written and oral requests in July and August 2010, respectively.

19       Narayanan has therefore failed to state a claim upon which relief can be granted.  Even if

20   Narayanan could plausibly allege that Johnson was the responsible party, he was not entitled to the

21   due process he alleged he was denied.  Accordingly, his procedural due process claims will be

22   dismissed with prejudice.

23

24       [3] It is unclear whether Naryanan's reassignment was part of the Board of Regents' decision.  If
     it was, Narayanan was also not entitled to a grievance proceeding under NHSE Code § 5.7.2, which
25   states that "[d]ecisions of the Board of Regents are not subject to review by grievance procedures."
     (Motion (#26), Ex. 4.)  UNR Bylaw 3.2.2, governing the "scope of grievance procedures," contains
26   identical language.  (Id. Ex. 12.)

**D. Substantive Due Process**

Plaintiffs' fourth claim for relief is brought under § 1983 against Johnson individually for violation of their Fourteenth Amendment right to substantive due process.  Like their equal protection claim, this claim is predicated on Johnson's alleged "participat[ion] in the wrongful termination of [Plaintiffs] from their permanent positions as tenured faculty members."  (Am. Complaint (#9), ¶ 47.)  Plaintiffs further clarify in their opposition brief that this claim is predicated on their allegations that their terminations were (1) motivated by their national origins, in violation of Title VII, § 1981, and their rights to equal protection, and (2) the result of breaches of their employment contracts.

Significantly, this claim is alleged only against Johnson in his individual capacity.  Yet, as already discussed, Plaintiffs have failed to include in their complaint any allegations suggesting any direct involvement by Johnson in their terminations.  Plaintiffs allege that the termination decisions were made by the Board of Regents, not Johnson; the Board of Regents made those termination decisions separately from and nearly a month after deciding to close Plaintiffs' department; and Plaintiffs make no allegation that Johnson's proposal to close Plaintiffs' department included any recommendation as to Plaintiffs' termination.  Johnson's actual activities, as alleged by Plaintiffs, are therefore too attenuated from Plaintiffs' termination to support a claim that any personal misconduct by Johnson deprived Plaintiffs of any property right in continued public employment.  Moreover, even if Plaintiffs could state a claim for violation of a substantive due process right to continued public employment, Johnson would be entitled to qualified immunity because there is "no clearly established constitutional right to substantive due process protection of continued public employment."  Lum v. Jensen, 876 F.2d 1385, 1389 (9th Cir. 1989).  Plaintiffs' fourth claim for relief will therefore be dismissed with prejudice.

**E. Breach of Contract**

In their fifth claim for relief, Plaintiffs claim that the Board of Regents breached their

11

employment contracts, apparently resting their claim on NHSE Section 5.4.7(a)-(b), which provides that any faculty member who is laid off because of financial exigency or for curricular reasons "shall be continued in employment, *if possible and if such employment does not result in the termination of employment of another faculty member*, in an appropriate qualified professional capacity within the System institution involved." (Motion (#26), Ex. 4 (emphasis added).) Plaintiffs allege that they were reassigned to inappropriate capacities by being reassigned to positions in a department that was closing. They allege that each of them could have been reassigned to another department that was not being closed and retained without resulting in the termination of another faculty member. (Am. Compl. (#9), ¶¶ 23, 25.)

The court finds Plaintiffs' conclusory allegations to be facially implausible. Given the mass faculty layoffs and cuts to budgets and departments that were occurring at the time of Plaintiffs' terminations, it defies credulity that Plaintiffs could have been retained without resulting in the termination of other faculty members. Plaintiffs' allegation is therefore not entitled to a presumption of truth, and in the absence of further factual allegations supporting their breach of contract claim, the amended complaint fails to state a claim. However, because it is not absolutely clear that the deficiencies could not be cured by amendment, the dismissal will be without prejudice and the court will grant Plaintiffs leave to amend.

**IV.    Conclusion**

In summary, Defendants' motion to dismiss or for judgment on the pleadings is granted in part and denied in part.

The motion is denied as to that part of Plaintiffs' first claim for relief alleging national origin discrimination against the Board of Regents; however, the equal protection claim against Johnson individually is dismissed without prejudice and with leave to amend.

The second claim for relief by Fernandez against the Board of Regents for age discrimination under the ADEA is dismissed with prejudice; however, Plaintiffs are granted leave

12

1   to amend to allege a claim for age discrimination under state law.

2         Plaintiffs' third and fourth claims for relief against Johnson for procedural and substantive

3   due process violations are dismissed with prejudice.

4         And finally, Plaintiffs' fifth cause of action against the Board of Regents for breach of

5   contract is dismissed without prejudice and with leave to amend.

6         IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (#26) is GRANTED

7   in part and DENIED in part.  Defendant Marc Johnson is hereby dismissed as a defendant.

8   Plaintiffs may file an amended complaint within 30 days.

9         IT IS SO ORDERED.

10         DATED this 7th day of September, 2012.

11

12

13                       LARRY R. HICKS
                            UNITED STATES DISTRICT JUDGE