UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RANGESAN NARAYANAN and GEORGE FERNANDEZ,

        Plaintiffs,

v.

THE STATE OF NEVADA ex rel. THE BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION ON BEHALF OF THE UNIVERSITY OF NEVADA, RENO, and MARC JOHNSON, in his individual capacity,

        Defendants.

3:11-cv-00744-LRH-VPC

ORDER

This is an employment dispute. Before the court is Defendants' Motion for Judgment on the Pleadings (#84[1]). Plaintiffs filed an opposition (#86), and Defendants replied (#87).

**I.     Facts and Procedural History**

The facts as alleged by Plaintiffs are as follows: Plaintiffs Rangesan Narayanan ("Narayanan") and George Fernandez ("Fernandez") are citizens of the State of Nevada, residing in Washoe County. (Second Am. Compl. #81, ¶¶ 4-5.) Narayanan's nation of origin is India. (*Id*. ¶ 49.) Fernandez's nation of origin is Sri Lanka. (*Id*. ¶ 50.) Defendant Marc Johnson ("Johnson") is a

---

[1] Refers to the court's docket entry number.

1  citizen of the State of Nevada, residing in Washoe County. (*Id*. ¶ 7.) During the relevant time,
2  Johnson was an administrator at the University of Nevada, Reno ("UNR"). (*See id*. ¶ 27.)
3        The Board of Regents of the Nevada System of Higher Education on Behalf of the
4  University of Nevada, Reno ("Board of Regents") hired Narayanan and Fernandez in 1984 and
5  1988, respectively, as Assistant Professors at UNR. (*Id*. ¶¶ 8-9.) The Board of Regents awarded
6  tenure to Narayanan and Fernandez in 1990 and 1994, respectively, in a department that would
7  become known as the Department of Resource Economics. (*Id.* ¶¶ 10-11.) In 2000, the Board of
8  Regents appointed Narayanan to the administrative position of Associate Dean of Outreach for the
9  College of Agriculture, Biotechnology, and Natural Resources. (*Id*. ¶ 12.) In 2002, the Board of
10 Regents appointed Fernandez to the faculty position of Statistician in the Nevada Agriculture
11 Experimental Station in the College of Agriculture, Biotechnology, and Natural Resources, a
12 position from which he was promoted to Professor in the Nevada Agriculture Experimental Station
13 by the Board of Regents. (*Id*. ¶ 13.) Both plaintiffs satisfactorily performed their work duties and
14 met the job-related requirements for their positions. (*Id*. ¶¶ 15-16.) In 2007, the Board of Regents
15 appointed Fernandez to the administrative position of Director and Chief Statistical Consultant for
16 the Center for Research, Design, and Analysis. (*Id*. ¶ 14.)
17       Both Fernandez and Narayanan entered into employment contracts for the academic year of
18 2009-2010 with the Board of Regents  under which they were tenured faculty members assigned to
19 serve their positions. (*Id*. ¶¶ 17-18.) Section 5.4.3 of the Nevada System of Higher Education Code
20 (the "Code") integrates the provisions of the Code with all employment contracts except as varied
21 in writing by the parties to the contract. (*Id*. ¶ 19.) Narayanan's and Fernandez's contracts did not
22 vary this provision. (*Id*.) Section 1.1(p) of the Code defines "tenure" as "academic freedom and
23 continuing employment, which may be terminated only for the reasons specified in the [Code]."
24 (*Id*. ¶ 20.) These reasons include a declaration of "financial exigency," "curricular reasons"
25 consonant with the mission of the University, and "an unsatisfactory rating in two consecutive
26 annual performance evaluations." (*Id*. ¶¶ 21-24.)

Section 3.4.6 of the Code states that a tenured administrator may be removed without cause, reasons, or right of reconsideration of the action, "but shall be reassigned in an appropriate capacity within the member institution in which the appointment with tenure was made." (*Id.* ¶ 25.) Sections 5.4.7(a)-(b) of the Code state that if a faculty member is "furloughed, pay is reduced or the faculty member is threatened with lay off or is laid off because of financial exigency or for curricular reasons," the faculty member will be continued in employment "if possible and if such employment does not result in the termination of employment of another faculty member." (*Id.* ¶ 26.)

In early 2010, an $11 million budget reduction was mandated by the Nevada legislature for UNR, coming after budget cuts in the amount of $33 million beginning in 2008. (Motion #26, Ex. 7.)[2] While UNR was forced to begin cutting programs with the $11 million budget reduction, its administration agreed on a vertical approach, protecting the quality and size of its core programs while closing, reducing, or reorganizing less crucial programs. (*Id.* Ex. 10.) On March 1, 2010, Johnson initiated an "Academic Planning Process" proposing, in part, the closure of the Department of Resource Economics for curricular reasons. (Second Am. Compl. #81, ¶¶ 28-31.) While Johnson's initial proposal included a list of names of faculty to be laid off, this list did not include Plaintiffs. (*Id.* ¶ 29.)

On May 20, 2010, the Interim Vice President for Research notified Fernandez that he would be reassigned from his administrative position to his "tenure home" in the Nevada Agriculture Experimental Station. (*Id.* ¶ 35.) However, Johnson decided that Fernandez's "tenure home" was instead the Department of Resource Economics, where Fernandez was ultimately reassigned. (*Id.* ¶

---

[2] On a motion to dismiss, a court may look beyond the complaint to matters of public record as well as records and reports of administrative bodies. *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). The Nevada System of Higher Education Code has the "force and effect of statute," *State ex rel. Richardson v. Board of Regents*, 261 P.2d 1199, 1201 (Nev. 1981), making it a matter of public record. The agenda and minutes of the Board of Regents are also public records. This court takes notice of those documents, attached as Exhibits 1-15 to Defendants' Motion to Dismiss (#26).

3

1  36.) Both Johnson and Read made inquiries into other possible assignments for Fernandez, but they
2  were unsuccessful. (*Id*. ¶ 37.)
3        On June 4, 2010, the Board of Regents approved the closure of two departments within the
4  College of Agriculture, Biotechnology, and Natural Resources, including the Department of
5  Resource Economics. (*Id*. ¶ 39.) At that time, the Board did not make any decisions regarding
6  which faculty to lay off. (*Id*.) On June 7, 2010, Johnson notified Narayanan of his reassignment
7  from his administrative position to a faculty position in the Department of Resource Economics,
8  effective June 30, 2010. (*Id*. ¶ 42.) In mid-June, Johnson informed Narayanan that Johnson was
9  unable to locate alternative placements for him. (*Id*. ¶ 43.) In late June, both Narayanan and
10 Fernandez received notice that the Board of Regents was laying them off for curricular
11 reasons—the closure of the Department of Resource Economics—effective June 2011. (*Id*. ¶¶ 44,
12 46.)
13       Of the five administrators who had obtained tenure while appointed at one of the two closed
14 departments, the Board of Regents terminated three administrators, including Narayanan and
15 Fernandez, whose nation of origin was not the United States and retained the two administrators
16 whose nation of origin was the United States. (*Id*. ¶ 51.) Of the 23 faculty members who obtained
17 tenure while appointed at one of the two closed departments, the Board of Regents terminated all
18 eight faculty whose nation of origin is not the United States and terminated only 5 of the 15 faculty
19 whose nation of origin is the United States. (*Id*. ¶ 52.) Plaintiffs allege that Johnson controlled the
20 process of termination and retention by reassigning certain faculty to soon-to-be-closed
21 departments (what Plaintiffs refer to as changing the faculty's "tenure home"). (*Id*. ¶¶ 51-52.)
22       The Board of Regents did not terminate the Associate Director for the Center for Research,
23 Design, and Analysis, who is at least 10 years younger than Fernandez, does not hold a tenured
24 faculty position, and had been at UNR for four years as opposed to Fernandez's 22 years. (*Id*. ¶ 56.)
25 Fernandez was 58 years old at the time of his layoff. (*Id*. ¶ 55.)
26 ///

4

On December 16, 2010, Narayanan filed a charge of discrimination against UNR with the United States Equal Employment Opportunity Commission (EEOC) alleging national origin discrimination. (*Id*. ¶ 58.) On July 26, 2011, the United States Department of Justice issued Narayanan a Notice of Right to Sue within 90 days of Narayanan's receipt of the notice. (*Id*. ¶ 59.) On October 18, 2010, Fernandez filed a charge of discrimination against UNR alleging age and national origin discrimination. (*Id*. ¶ 60.) On July 25, 2011, the United States Department of Justice issued Fernandez a Notice of Right to Sue within 90 days of Fernandez's receipt of the notice. (*Id*. ¶ 61.)

Plaintiffs filed this action on October 14, 2011. Shortly thereafter, they filed an amended complaint (#9) alleging the following claims against the Board of Regents and Johnson: (1) national origin discrimination, (2) age discrimination, (3) violation of procedural due process rights, (4) violation of substantive due process rights, and (5) breach of contract. This court dismissed every claim but the national origin discrimination claim against the Board of Regents (#77). Given an opportunity to amend their complaint, Plaintiffs have alleged in their Second Amended Complaint (1) national origin discrimination claims against the Board and Johnson, (2) a Nevada age discrimination claim against the Board, and (3) breach of contract claims against the Board. Defendants move for judgment on the pleadings.

**II.   Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). In ruling on a motion for judgment on the pleadings, the court accepts as true all well-pleaded factual allegations by the nonmoving party and construes the facts in the light most favorable to that party. *Id*. Thus, when brought by a defendant, the same legal standard applies to a post-answer Rule 12(c) motion for judgment on the pleadings as applies

5

to a pre-answer Rule 12(b)(6) motion to dismiss for failure to state claim upon which relief can be granted. *See Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009); *see also* Fed. R. Civ. P. 12(h)(2)(B) (providing the defense of failure to state a claim may be raised by a motion under Rule 12(c)); *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980) (holding that a post-answer Rule 12(b)(6) motion should be treated as a Rule 12(c) motion).

To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hospital Medical Center*, 521 F.3d 1097, 1103 (9th Cir. 2008). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 678-79. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* (citation omitted). However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at

680) (alteration in original) (internal quotation marks omitted). The court discounts these allegations because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

**III.   Discussion**

    **A.  National Origin Discrimination**

In their first claim for relief, Plaintiffs allege that the Board of Regents and Johnson discriminated against them based on national origin. Their claim is brought under Title VII and 42 U.S.C. § 1981 as to the Board of Regents as their employer, and under 42 U.S.C. § 1983 as to Johnson individually for the alleged violation of their rights to equal protection under the Fourteenth Amendment. Defendants do not (at this stage) object to the claims against the Board.

Upon amendment, Plaintiffs have successfully alleged a national origin discrimination claim against Johnson under section 1983. The substantive principles governing intentional discrimination in violation of the Fourteenth Amendment, actionable under section 1983, are the same as those governing similar claims under Title VII. *See Bator v. Hawaii*, 39 F.3d 1021, 1028 n. 7 (9th Cir. 1994)). In order to make out a prima facie case of discrimination on the basis of national origin, Plaintiffs must show "(1) they belonged to a protected class; (2) they were qualified for their jobs; (3) they were subjected to an adverse employment action; and (4) similarly situated employees not in their protected class received more favorable treatment." *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 818 (9th Cir. 2002) (discussing national origin discrimination under Title VII). However, to sustain a national origin discrimination claim at the pleadings stage, a plaintiff may merely allege that an employer treated others not in the protected class more favorably than the plaintiff. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002) (noting that the *McDonnell Douglass* prima facie standard is an evidentiary standard and is not required at the pleadings stage); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).

7

Here, Plaintiffs have alleged that their nations of origins are not the United States, that they were performing their jobs satisfactorily, that they were terminated, and that Johnson discriminated against them on the basis of national origin by assigning them to the doomed Department of Resource Economics while assigning others (whose nation of origin *is* the United States) to other departments. This is sufficient to give rise to a plausible claim that Johnson intentionally discriminated against Plaintiffs on the basis of national origin by treating similarly situated individuals outside Plaintiffs' protected class more favorably. In particular, where the First Amended Complaint failed because it did not allege that Johnson had played "any role in the decision to terminate Plaintiffs," (Order #77, p. 6), the Second Amended Complaint succeeds by alleging such a role in the form of discriminatory "tenure home" assignments. Finally, though Defendants may be able to offer evidence that the assignment process was not discriminatory, they must do so at the summary judgment stage, not through a motion to dismiss. Nor will the court treat Defendants' Motion as a motion for summary judgment at this early stage.

**B. Age Discrimination**

Defendants next move to dismiss Plaintiffs' second claim for relief, which is brought only by Fernandez against the Board of Regents for age discrimination under Nevada's age discrimination statute, Nev. Rev. Stat. ("NRS") § 613.330. Under section 613.330, Fernandez's suit is untimely, and dismissal is appropriate.

A claim for unlawful discrimination under NRS § 613.330 is "assessed under the applicable federal anti-discrimination law." *Coburn v. PN II, Inc.*, 372 F. App'x 796, 798 (9th Cir. 2010) (citing *Apeceche v. White Pine County*, 615 P.2d 975, 977-78 (Nev. 1980)). As with Title VII and the ADEA, Nevada's anti-discrimination laws require plaintiffs to exhaust administrative remedies before filing suit. NRS § 613.420; *see also Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005). However, suit must be filed within 180 days of the allegedly unlawful act (with time for filing tolled during the exhaustion period). NRS § 613.430. The Nevada Equal Rights Commission ("NERC") and the federal EEOC operate under a work-sharing agreement such that a right-to-sue

8

1  letter from the EEOC is sufficient to pursue a claim under Nevada law. (NERC Factsheet #29-1,
2  Ex. 1.)

3  Here, the unlawful act triggering the 180 day period was, at the latest, Fernandez's notice of
4  termination on June 18, 2010. *See Hay v. Wells Cargo, Inc.*, 596 F. Supp. 635, 639 (D. Nev. 1984)
5  *aff'd*, 796 F.2d 478 (9th Cir. 1986) ("[T]he applicable limitations period is activated once the
6  employee knows or should know that an unlawful employment practice has been committed.").[3]
7  121 days elapsed before Fernandez filed his complaint with the NERC, and his right to sue letter
8  was issued on July 25, 2011. Fernandez then waited an additional 80 days before filing this suit.
9  Therefore, since 201 total days passed between the unlawful act and Fernandez's filing of suit,
10  Fernandez's claim under NRS § 613.330 is untimely. *See* NRS § 613.430.

**C. Breach of Contract**

In their final claims for relief, Plaintiffs argue that the Board of Regents breached their employment contracts. Plaintiffs assert five different theories of breach: (1) that they were reassigned in inappropriate capacities, (2) that they were reassigned to a department that was to be closed, (3) that they were laid off on the basis of national origin, (4) that the Board did not declare a financial exigency, and (5) that the "curricular reasons" justifying their department's closure were not bona fide.

To the extent Plaintiffs' claims rely on the same grounds as their national origin discrimination claims, they have successfully alleged a breach of contract. Defendants do not object to the validity of the contracts between UNR and Plaintiffs. Instead, Defendants argue Plaintiffs' theories (1), (2), (4), and (5) are conclusory in nature (or do not state a material breach at all) and are therefore not entitled to the presumption of truth. The court agrees. These theories do not improve upon the First Amended Complaint, about which the court said, "Given the mass faculty

---

[3] In light of *Hay*, Fernandez's claim that his cause of action accrued when his university-internal appeals concluded is simply incorrect. *See also Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1049 (9th Cir. 2008).

9

layoffs and cuts to budgets and departments that were occurring at the time of Plaintiffs' terminations, it defies credulity that Plaintiffs could have been retained without resulting in the termination of other faculty members." (Order #77, p. 12:10-13.) The court noted the absence of factual allegations supporting these theories and dismissed the breach of contract claim. (*Id*. at p. 12:13-15.)

However, upon amendment, Plaintiffs have alleged that they were laid off on the basis of their national origin. Since tenured faculty "may be terminated only for the reasons specified in the [Code]," (Second Am. Compl. #81, ¶ 20), and since national origin is not one of those reasons, Plaintiffs' allegations state a claim for breach of contract. This is also Plaintiffs' only theory of breach for which they have provided adequate factual support. Therefore, on this ground only will Plaintiffs' breach of contract claim go forward.

**IV.   Conclusion**

Defendants' motion for judgment on the pleadings is granted in part and denied in part.

The motion is denied as to Plaintiffs' first claim for relief alleging national origin discrimination against the Board of Regents and Johnson. The motion is also denied as to Plaintiffs' breach of contract claim against the Board of Regents. The motion is granted, however, as to Fernandez's age discrimination claim against the Board of Regents.

IT IS THEREFORE ORDERED that Defendants' Motion for Judgment on the Pleadings (#84) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this 30th day of May, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE